**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOURMET KITCHENS, INC., | ) | Case No. 11-19605 |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | **Hearing Date: April 17, 2014** |
| | | **Hearing Time: 10:30 a.m.** |

## NOTICE OF MOTION

To:  See Attached Service List

PLEASE TAKE NOTICE that we shall appear on **April 17, 2014 at 10:30 a.m.**, we shall appear before the Honorable Jacqueline P. Cox of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 680 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **APPLICATION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO GOURMET KITCHENS, INC.**, a copy of which is hereby served upon you.

> CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
> NATHAN Q. RUGG, ESQ. (ARDC #6272969)
> ERICH S. BUCK, ESQ. (ARDC #6274635)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd., Suite 1050
> Chicago, Illinois 60604
> (312) 435-1050
> Fax (312) 435-1059
>
> **Counsel for Gourmet Kitchens, Inc.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the Notice and Motion referenced herein was served upon the parties listed on the service list below, via ECF or facsimile, as indicated thereon, on April 7, 2014.

> By:   /s/ Nathan Q. Rugg

#256258v2

## SERVICE LIST

**Via ECF**

Patrick S. Layng
Office of the United States Trustee
219 South Dearborn Street, Suite 873
Chicago, IL 60604
USTPRegion11.ES.ECF@usdoj.gov

*Counsel for U.S. Small Business Administration*
Joel Nathan, Esq.
U.S. Dept. of Justice
219 S. Dearborn St.
Chicago, IL 60604
joel.nathan@usdoj.gov

*Counsel for MB Financial*
Robert Glantz and Peter J. Roberts
Shaw Gussis Fishman Glantz
Wolfson & Towbin LLC
321 N. Clark St, Suite 800
Chicago, IL 60654
proberts@shawgussis.com
rglantz@shawgussis.com

*Counsel for Anthony Marano Company*
Michael Stanley, Esq.
Ordower & Ordower, P.C.
One N. LaSalle St., Ste. 1300
Chicago, IL 60602
Fax: 312-263-0023
mtstanley@earthlink.net

*Counsel for 4300 Morgan LLC*
J. Matthew Pfeiffer, Esq.
Richard C. Perna, Esq.
Fuchs & Roselli, Ltd.
440 W. Randolph Street, Suite 500
Chicago, Illinois 60606
mpfeiffer@frltd.com

*Counsel for DC Norris & Company Ltd.*
c/o Deborah L. Thorne
Barnes & Thornburg, LLP
1 N. Wacker Dr., Ste. 4400
Chicago, IL 60606
kbruhnke@btlaw.com

*Counsel for Creditors Committee*
Melissa M. Root and Cathy Steege
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
csteege@jenner.com
mroot@jenner.com

*Counsel for American Chartered Bank*
David L. Kane, Esq.
Meltzer, Purtill & Stelle LLC
300 S. Wacker Drive, Ste. 3500
Chicago, IL 60606
dkane@mpslaw.com

*Counsel for E-Z Spuds, Inc.*
David A. Adelman
Adelman Law Offices, P.C.
1901 N. Roselle Rd., Ste. 800
Schaumburg, IL 60195
Adelman@pacaenforcer.com

*Counsel for Kramer Mechanical, LLC*
James Wognum, Esq.
Law Office of James P. Wognum
122 S. Michigan Ave., Suite 1290
Chicago, IL 60603

*Counsel for Gordon Food Service, Inc.*
Judy B Calton, Esq.
Joseph R. Sgroi, Esq.
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue Suite 2290
Detroit, MI 48226
jcalton@honigman.com

*Counsel for Cooling Equipment Services, Inc.*
Donald J. Kindwald, Esq.
Kindwald Law Offices, P.C.
105 W. Madison St., Ste. 1800
Chicago, IL 60602
djk@kindwaldlaw.com
sko@kindwaldlaw.com

*Counsel for Koch Equipment LLC*
Jeffrey S. Burns, Esq.
Crowley Barrett & Karaba, Ltd.
20 S. Clark St., Ste. 2310
Chicago, IL 60603
jburns@cbklaw.com

*Counsel for Robert Reiser & Co., Inc.*
Jeffrey A. Chadwick, Esq.
Paul J. Catanese, Esq.
McGuire Woods, LLP
77 W. Wacker Drive, Ste. 4100
Chicago, IL 60601
pcatanese@mcguirewoods.com

*Counsel for Lisa and Farzad Shahsavarani
and GKI Funding LLC*
William J. Factor, Esq.
David Paul Holtkamp, Esq.
Jeffrey K. Paulsen
The Law Office of William J. Factor, Ltd.
1363 Shermer Rd., Ste. 224
Northbrook, IL 60062
wfactor@wfactorlaw.com
wfactorlaw@gmail.com
dholdtkamp@wfactorlaw.com
jpaulsen@wfactorlaw.com

*Counsel for Raymond Leasing*
Amy Knapp, Esq.
Troy M. Sphar, Esq.
Swanson Martin & Bell, LLP
330 N. Wabash, Ste. 3300
Chicago, IL 60611
aknapp@smbtrials.com
tsphar@smbtrials.com

*Counsel for Taylor Prepared Foods, Inc.*
George R. Mesires, Esq.
Ungaretti & Harris, LLP
70 West Madison, Suite 3500
Chicago, IL 60602
grmesires@uhlaw.com

*Counsel for Texas Women Ventures Fund, LP, a
division or fund of TWV Capital Management,
LLC*
Jonathan T. Brand
Lakelaw
420 W. Clayton Street
Waukegan, IL 60085
jbrand@lakelaw.com
ECF@lakelaw.com

*Counsel for Taylor Prepared Foods, Inc.*
David R. Doyle
Shaw Fishman Glantz & Towbin LLC
321 N. Clark St., Ste. 800
Chicago, IL 60654
ddoyle@shawfishman.com
kjanecki@shawfishman.com

*Counsel for Airgas North Central, Inc.*
Brian M. Graham
7634 Lakeside Drive
Frankfort, IL 60423
bmgrahampack@sbcglobal.net

*Counsel for Taylor Prepared Foods, Inc.*
Patrick F. Ross
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602
pfross@uhlaw.com
kburde@uhlaw.com
rjanczak@uhlaw.com
eazamora@uhlaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOURMET KITCHENS, INC., | ) | Case No. 11-19605 |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | Hearing Date: April 17, 2014 |
| | ) | Hearing Time: 10:30 a.m. |

**APPLICATION OF ADELMAN & GETTLEMAN, LTD.
FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF
EXPENSES AS COUNSEL TO GOURMET KITCHENS, INC.**

TO:   THE HONORABLE JACQUELINE P. COX
      U.S. BANKRUPTCY JUDGE:

Now comes Chad H. Gettleman, Henry B. Merens, Nathan Q. Rugg, Erich S. Buck and

Rebecca D. Rosenthal on behalf of Adelman & Gettleman, Ltd., ("Movant"), counsel to Gourmet

Kitchens, Inc., an Illinois corporation, debtor herein ("GKI" or the "Debtor"), and hereby submits

the following application and moves for the entry of an order for the allowance and payment of

final compensation and reimbursement of ordinary and necessary expenses incurred in

connection therewith as counsel to the Debtor during the pendency of this case under Chapter 11

of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*, the "Code"), pursuant to Section 330 of the

Code and Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"),

and in support thereof, respectfully states as follows:

**I.**

**INTRODUCTION**

This application (the "<u>Final Application</u>") seeks a final award with respect to the first and only interim application submitted by the Movant for the period of May 8, 2011 through October 31, 2011 (the "<u>Interim Application Period</u>"), and further encompasses the thirty (30) month period from November 1, 2011 through April 7, 2014 (the "<u>Final Application Period</u>"). The Final Application Period reflects the continuing services by Movant in its successful efforts to complete an orderly resolution of the Chapter 11 Case after the distribution of funds to creditors with liens on the Debtor's assets, claimants with superpriority liens and claims under the Perishable Agricultural Commodities Act (the "**<u>PACA Claims</u>**") and to unsecured creditors pursuant to the Committee Carve-Out (as hereinafter defined). The vast majority of the necessary work performed and concomitant fees incurred relate to first six (6) months and the last two (2) months of the Final Application Period.

The GKI bankruptcy case (the "<u>Chapter 11 Case</u>") has presented Movant with highly different responsibilities and challenges throughout the Final Application Period, which now have largely comes to a successful conclusion. From the outset of the Chapter 11 Case, GKI had no shortage of issues which needed to be addressed, including but limited to a tough economic climate, a lack of financing alternatives, cash-flow difficulties, and an actively involved secured creditor, MB Financial Bank, N.A. ("<u>MB</u>").   In the first six months of this case, Movant has addressed a myriad of complex issues on essentially a daily basis. Despite these significant issues, Movant assisted GKI's management in bringing the Chapter 11 Case to a resolution, which, after long and often challenging negotiations with the U.S. Trustee's office, MB, and the committee of unsecured creditors (the "<u>Committee</u>"), took the form of a sale of substantially of the Debtor's assets.

As part of the first six (6) months of the Final Application Period, Movant had to focus on pushing through the sale process, a tumultuous closing, and series of issues that had to be resolve post-closing that related directly to the sale process.   Among other things, Movant helped the Debtor obtain continued use of MB's cash collateral, oversaw the mounting administrative issues that arose in the Chapter 11 Case and further negotiated debtor-in-possession financing to ensure the Debtor could maintain operations throughout the sale process to ensure that it maximized the value of its assets for the benefit of all creditors and parties in interest. Specifically, the Debtor experienced significant liquidity issues and did not have sufficient available sources of working capital to pay its outstanding payables that would be incurred through a closing on the sale without the financing it obtained. It was critical to preserve the Debtor's business as a going concern through closing to maximize the value of the assets of the estate and ensuring the highest and best offer for the sale assets in fact closes. Indeed, the successful bid contemplated a going concern sale of the assets as an operating business.

After overseeing a highly-efficient marketing, sale and auction process, the Movant orchestrated the court approval of the successful bid for the Debtor's assets pursuant to a sale order entered on December 1, 2011, over the objection of several secured creditors.   The sale transaction eventually closed notwithstanding ongoing disputes among the successful bidder, MB, the Committee and the Debtor's management, due in no small part to the efforts of the Movant.

The Debtor's operations ceased effective as of the closing of the sale transaction in December 2011.   Significant work remained, however, as the Movant guided the Debtor

through the wind down of its affairs in the Chapter 11 Case and assisted in the resolving

post-closing disputes, addressing creditor inquiries, paying PACA Claims in full, completing the

Debtor's ongoing duties as a debtor-in-possession and ultimately ensuring that the Chapter 11

Case continued generally towards a successful conclusion.

Overall, this Final Application seeks an award of compensation on a final basis for the

period of May 9, 2011, through and including April 17, 2014, consistent with the Movant's

previous interim application, and with respect to compensation received during the Final

Application Period, consistent with that certain Order Establishing Procedures for the Payment

of Monthly Interim Compensation and Reimbursement of Expenses of Professionals entered in

this case on July 17, 2011 (the "Payment Procedures Order").

On November 23, 2011, Movant filed its first interim fee petition covering the six-month

period from May 8, 2011, the date of the commencement of this case, through October 31, 2011

(the "First Interim Application"), which sought the interim allowance of $193,692.00 and

reimbursement of expenses in the amount of $2,163.07. By Order of this Court dated December

20, 2011, Movant was awarded interim compensation and reimbursement of expenses pursuant

to the First Interim Application in the amounts of $193,692.00 and $2,163.07, respectively

(resulting in a total additional payment after application of prepayment and monthly payments

pursuant to Payment Procedures Order - $43,283.62).      Movant subsequently submitted fee

statements on a monthly basis pursuant to the Payment Procedures Order (which allowed

payment of 80% of fees and 100% of expenses, if the funds were available), for services

rendered from November 1, 2011, through and including April 30, 2012.    The monthly fees

statements and the compensation received thereby is summarized below:

(a)   Sixth Monthly Payment Request (November 1 – 30, 2011):
      **Net Payment:** $86,121.66                    **Balance Unpaid:**    $20,792.10

(b)   Seventh Monthly Payment Request (December 1 – 31, 2011):
      **Net Payment:** $53,696.95                    **Balance Unpaid:**    $13,232.80

(c)   Eighth Monthly Payment Request (January 1 – 31, 2012):
      **Net Payment:** $16,376.45                    **Balance Unpaid:**    $4,076.90

(d)   Ninth Monthly Payment Request (February 1 – 29, 2012):
      **Net Payment:** $6,185.05                     **Balance Unpaid:**    $1,508.00

(e)   Tenth Monthly Payment Request (March 1 – 31, 2012):
      **Net Payment:** $2,621.92                     **Balance Unpaid:**    $648.00

(f)   Eleventh Monthly Payment Request (April 1 – 30, 2012):
      **Net Payment:** $3,292.40                     **Balance Unpaid:**    $3,292.40

**TOTAL PAYMENTS REQUESTED: $168,294.43;   UNPAID BALANCE:   $44,366.20**

In total, the Movant has incurred $205,869.00 in and $3,999.03 expenses pursuant to the

Sixth through Eleventh monthly payment requests (the "Monthly Payment Requests"). The

unpaid payment requests (*i.e.* the Eleventh Monthly Payment Request), aggregate 20% fee

holdback, and unpaid expenses related to the Monthly Payment Requests total $44,366.20.

The Movant did not submit further Monthly Payment Requests subsequent to the

Eleventh Monthly Payment Request.   As part of this Application and in addition to the Monthly

Payment Requests, the Movant seeks allowance of $40,156.00 in fees for professional services

rendered to the Debtor and $1,384.89 in expenses related thereto for the period of May 1, 2012

through April 7, 2014 (the "Final Invoice Period").

As such, and in total, Movant seeks in this Final Application (a) the allowance on a final

basis of the fees and expenses awarded with respect to each of the Interim Application, and (b)

allowance and payment on a final basis of compensation in the Final Application Period of (i)

the amount of $44,337.80 for fees earned and reimbursement of expenses in the amount of

$28.40 related to the Monthly Payment Requests (total payment requested of $44,366.20) and

(ii) $40,156.00 in fees earned and $1,384.89 of expenses incurred during the Final Invoice

Period (total payment requested of $41,540.89).   **Movant therefore seeks authority for the**

**Debtor to pay a total of $85,907.09** to Movant for the Final Application Period.

Movant notes that the hourly rates charged by Movant remained unchanged since the

commencement of this case, approximately three (3) years ago, notwithstanding Movant's

respective rate increases on other matters that commenced at the beginning of the calendar years.

Such rates also remain significantly less than Movant's current rates and continue to be

substantially less than the rates of many other bankruptcy practitioners of similar or even less

experience in this District. Copies of the six (6) Monthly Payment Requests are attached hereto

in chronological order as <u>Exhibits A-F</u>, and are expressly made a part hereof. In addition, the

Movant has attached hereto as <u>Group Exhibit G</u>, which is made a part hereof, invoices by

category for the Final Invoice Period (together with <u>Exhibits A-F,</u> the "<u>Statement Exhibits</u>"). For

each of the Statement Exhibits, detailed statements of services rendered by category incurred

during the Final Application Period are attached thereto, representing each of the categories

described in Section III below in order, as applicable.

As further discussed herein, during the Final Application Period, the Chapter 11 Period

continued to present Movant with highly different responsibilities and challenges. Movant has

addressed a myriad of complex issues throughout the Final Application Period, most notably

obtaining court approval for the asset sale and closing the sale transaction. Despite these

significant issues, Movant has assisted GKI's management –and to the extent necessary, worked

with the Committee and MB and their respective counsel– in analyzing, formulating and documenting the means to conclude this case through the court-approved payments to the PACA creditors, creditors with liens on assets of the estate, employees and other unsecured creditors. In total, as reflected herein, Movant has expended 638.4 hours of professional legal services during the Final Application Period, evidencing the continuing commitment required of Movant to date.

## II.

## OVERVIEW OF SERVICES RENDERED IN THIS CASE

### A.     The Interim Application

The Interim Application is part of the docket in the Chapter 11 Case at Docket Nos. 219 and 220, and has been approved by prior order of this Court [Docket No. 248]. Movant hereby seeks final approval of the compensation awarded during the Interim Application Period pursuant to the Interim Application and the related order.

### B.     The Final Application Period

Between November 1, 2011 and April 7, 2014, Movant has taken steps to (i) investigate analyze the remaining assets and liabilities of GKI and assist in obtaining court approval of payment of liabilities outside of a plan of reorganization; (ii) advise the Debtor of its rights, duties and obligations as a debtor in possession under the Code; (iii) assist in the Debtor's dealings with its creditors, shareholders and other interested parties; (iv) analyze the options for, and effect a successful conclusion of, this Chapter 11 case outside a plan of reorganization; (v) to work with creditors and parties in interest to ensure distribution of the proceeds of the asset sale; (vi) to effect a payment of claims held by valid PACA Claimants and to object to the claims

which did not qualify for protection under PACA; and most significantly, (vii) assist the Debtor in the sale of substantially all assets of the estate as a going concern operation.

Overall, the majority of the time expended during the Final Application Period was focused on the sale effort through closing and post-closing matters, and was rendered by Nathan Q. Rugg in order to take advantage of his significant experience in the complexities of this Chapter 11 case. Movant maintained Mr. Rugg's rates at the same level over the three (3) years of the Chapter 11 Case despite the raise in his rates generally charged to the Movant's clients as a whole.   The efforts required and expended by Mr. Rugg and the other members of Movant during the Final Application Period, and the results achieved by Movant to date, amply supports the allowance of compensation requested herein.

**III.**

**LEGAL SERVICES RENDERED**

For ease of reference, Movant has identified and set forth five (5) categories of legal services rendered during the Final Application Period.   Each category contains (i) a narrative of the matters involved; (ii) a general description of the tasks performed; (iii) detailed time records in chronological order, with each attorney's time described therein; (iv) the nature and purpose of such entries; and (v) the result achieved or benefit to the estate, as required by In re Wildman, 72 B.R. 700, 708 (Bankr. N.D. Ill. 1987).   See also In re Pettibone Corporation, 74 B.R. 293, 301 (Bankr. N.D. Ill. 1987).

**FINAL APPLICATION PERIOD**
**(November 1, 2011 – April 7, 2014)**

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| A.   Administrative Matters | 112.6 | $44,782.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| B.   Cash Collateral | 13.4 | $5,480.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| C.   Asset Sale Efforts | 449.5 | $172,073.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| D.   Fee Petition | 48.8 | $17,550.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| E.   PACA Claims | 14.1 | $5,640.00 |

### A.   ADMINISTRATIVE MATTERS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 0.1 | $460 | $        46.00 |
| NQR | 109.7 | $400 | $   43,880.00 |
| ESB | 2.7 | $300 | $        810.00 |
| HBM | 0.1 | $460 | $        46.00 |
| TOTAL | 112.6 | | $   44,782.00 |

Movant expended approximately 112.6 hours during the Final Application Period

connection with the performance of the Debtor's duties under Section 1107 of the Code and the

numerous administrative and related matters arising herein.    These matters included the many

miscellaneous services that are usually required to be furnished on behalf of a debtor in Chapter

11 as well as many other matters that arose due to the complexity of the Debtor's affairs,

including the including the submission of operating reports and attending to the post-closing

administration of the estate after the related cessation of business operations.

As evidenced by the Monthly Statements, the many efforts rendered by Movant in this

category include:

i.   Creditor Inquiries. Movant promptly responded to the inquiries of creditors and other parties in the Chapter 11 Case regarding the sale and ongoing business operations of the Debtor, the impact of same on potential distribution on their claims, wage claims, the continuation of the business post-closing, post-petition trade claims that remain unpaid after the closing and many other matters. In Movant's many years of experience representing debtors in Chapter 11 cases, Movant has found that a prompt and complete response to parties requesting information engenders a cooperative spirit which, in turn, results in fewer and less costly proceedings. Movant would also advised creditors of the Committee's role and how to contact its counsel;

ii.  Operating Reports. Movant worked to ensure the filing and dissemination of the debtor in possession operating reports and other financial statements as well as rendering the necessary assistance to the Debtor as required regarding same;

iii. Committee Carve Out. Movant worked with the Debtor to address and respond to the Committee's efforts to obtain from MB specific funds that would be carved out of the MB's recovery on its secured claim in order to make some distribution to unsecured creditors, which otherwise would not be available to them (the "Committee Carve-Out"), including the motions and necessary court authority related thereto;

iv.  Corporate Governance.  The sale process and cessation of business necessitated Movant's guidance to address the resignation of certain of the Debtor's officers, compensation of the remaining officer and other corporate governance matters to ensure that the Debtor continued to attend to its fiduciary obligations to all creditors and to maintain the viability of the Chapter 11 Case;

v.   Insurance. After the closing the Movant assisted the Debtor to address continuing insurance coverage related to the property of the estate, pre- and post-closing product claims and the directors and officers of the Debtor;

vi.  U.S. Trustee. Movant contacted the attorney from the UST's office assigned to the Chapter 11 Case in connection with most, if not all, motions in the Chapter 11 Case to discuss the Debtor's intentions related thereto. Movant provided the office of the UST with constant updates on all matters arising in the Chapter 11 Case and sought input from the UST on same. Specifically relating to post-closing matters, the Movant also had to address the unique disbursements related to the sale and application of same to future UST fees; and

vii.    <u>Miscellaneous</u>. Movant also performed numerous other miscellaneous tasks required for the Debtor's operations and compliance with its duties and obligations as a debtor in possession throughout the Final Application Period, and to determine alternative means of successfully concluding this case other than through a liquidating plan of reorganization, which was not feasible in this matter for a variety of reasons.

As demonstrated by the foregoing, Movant was required to expend significant services in the Administrative Matters Category which were both typical in Chapter 11 and extraordinary to this Chapter 11 Case. Movant asserts that under the circumstances, the services rendered by Movant for matters included in this category were warranted, actual, necessary, reasonable and benefitted the estate.

## B.   CASH COLLATERAL

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 0.4 | $460 | $       184.00 |
| NQR | 11.4 | $400 | $    4,560.00 |
| HBM | 1.6 | $460 | $       736.00 |
| TOTAL | 13.4 | | $    5,480.00 |

Movant expended approximately 13.4 hours during the Final Period primarily in connection with the continuation of the Debtor's use of MB's Cash Collateral and the negotiation of DIP financing loan (and the underlying documents therefor), which insured the Debtor's compliance with its debtor-in-possession's duties and responsibilities and allowed the Debtor to maintain its operations to preserve the going concern value of its business.

As referenced in the Interim Application and in the discussions below related to the asset sale efforts, Movant negotiated for continued authority to use Cash Collateral over continuing,

ongoing and prolonged discussions with MB and the Committee. Movant also negotiated tirelessly with MB and the Committee over the terms of the Second Cash Collateral Order.

As previously stated, MB was pushing for liquidation of the Debtor's assets prior to the filing of the Chapter 11 Case. Movant had discussed this matter with the Debtor and the Debtor's financial consultant and determined a reorganization or going-concern sale was in the best interests of the Debtor's creditors and its numerous employees.   To that end, the Debtor also determined that additional financing would be required to maintain operations during November and December, 2011, through the closing of a sale. The Movant thus assisted with the negotiation and obtaining court approval of a new loan from MB to ensure the Debtor could continue to operate while focusing on a going-concern sale of the business.

## C. ASSET SALES EFFORTS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 70.4 | $460 | $ 32,384.00 |
| NQR | 261.9 | $400 | $ 104,760.00 |
| ESB | 88.7 | $300 | $ 26,610.00 |
| HBM | 6.6 | $460 | $ 3,036.00 |
| RDR | 14.1 | $300 | $ 4,230.00 |
| JB | 7.8 | $135 | $ 1,053.00 |
| TOTAL | 449.5 | | $ 172,073.00 |

Movant expended approximately 449.5 hours during the Final Application Period in connection with asset sale efforts of the Debtor, *i.e.*, to generate and complete the sale of substantially all of the Debtor's assets (as well as the related real estate) as a going concern. Throughout the first five (5) months of the Chapter 11 Case, Movant engaged in discussions with the Debtor's management and financial advisor about a potential sale (in contrast to a potential plan of reorganization), and Movant also fielded calls from counsel of potential interested buyers.

However, the asset-sale process took on a new urgency in light of the Debtor's negotiations with MB and the Committee over what would become the Second Cash Collateral Order. As noted in the Interim Application, as a condition of the Debtor's continued use of Cash Collateral beyond the beginning of October, the Debtor agreed to a tightly monitored process for a sale of all of its assets. Among other things, the Second Cash Collateral Order required the Debtor to retain an investment banker/broker selected by a majority vote of the Debtor, MB and the Committee for the purpose of marketing the Debtor's business to prospective buyers and help see the Debtor through a Section 363 sale process.    To that end, Movant worked tirelessly with MB, the Committee and the U.S. Trustee's office in ironing out the sale procedure terms of the Second Cash Collateral.    Movant also worked with the Debtor, MB and the Committee in the unanimous selection of Equity Partners as the Debtor's broker, followed by Movant's preparation of a retention motion for Equity Partners and negotiation over the terms of the retention agreement, including the source of funding for the Broker's services.

In accordance with the requirements of the Second Cash Collateral Order, Movant also worked intimately with the Debtor, Silverman Consulting and Equity Partners in establishing a

plan of action for marketing the Debtor's business to prospective stalking-horse bidders for the eventual sale of the Debtor's assets. To that end, Movant also assisted the foregoing parties in addressing due diligence inquires by prospective bidders, including but not limited organizing the Debtor's detailed document production in response thereto.

In the Final Application Period the Movant's efforts and attention to this critical matter only intensified. In November and December 2011, the Movant incurred over 80% of the total time billed for this matter, as the going concern sale dominated the Debtor's efforts to obtain the highest and best offer for its assets and thus maximize the recovery and benefits to all of its creditors through the Chapter 11 Case.

To obtain the successful result, the Debtor need the Movant to, among things: (a) attend to due diligence requests for counsel from interested parties; (b) address allegations by MB that the Debtor's principals did not provide complete cooperation for such due diligence and the sale process; (c) assist with a comprehensive marketing, notice and auction process and obtain court approval of same through a formal motion process and tireless negotiations among the various parties in interest, including MB, the Committee, landlords, equipment lenders, taxing and regulatory authorities and the potential bidders; (d) assist with negotiations among several potential "stalking horse" bidders and the contested court-approval of same; (e) draft and negotiate asset purchase agreements with such bidders; (f) analyze the universe of secured, administrative and priority claims, as well as the potential ultimate purchase price, to determine the feasibility of the sale process and to formally address and resolve issues related thereto; (g) attend to issues specific to the transfer to the estate and sale of the real estate at which the Debtor operated its business, which was owned by one of the Debtor's principals and subject to a

mortgage and disputed liens; (h) attend and present argument at numerous court hearings for approval of the various components of the sale process, which hearings were always contested by various creditors and parties in interest; (i) prepare for and conduct an auction primarily between two (2) bidders; (j) obtain approval of the successful bid from the auction and approval of the sale over the objection of numerous creditors alleging a lien or other security interest in the assets and sale proceeds; (k) address the rejection, assumption and/or assignment of various executory contracts and leases; (l) prepare all necessary documentation for and close the sale transaction on an expedited basis to preserve the going concern value of the Debtor's operations and in compliance with the requirements set by the successful bidder; (m) address and resolve disputes at closing regarding new sale requirements that the successful bidder and management of the Debtor attempted to impose; and (n) attend to various post-closing requirements related to the closing of the Debtor's bank accounts, payment of outstanding trade claims, resolution of various utility-related disputes and other matters.

### D. FEE PETITION

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| ESB | 17.7 | $300 | $ 5,310.00 |
| NQR | 29.1[1] | $400 | $ 11,640.00 |
| RDR | 2.0 | $300 | $ 600.00 |

---

[1] Includes 12.0 hours for preparation of the Final Application. Movant avers that it expended over 15 hours in connection with the preparation of the Final Application, which is not set forth on the Statement Exhibits, but is seeking compensation for only 12 hours of such time.

| | | | |
|---|---|---|---|
| TOTAL | 48.8 | | $      17,550.00 |

Movant expended 48.8 hours during the Final Application Period, in connection with the analysis of fee requests of other professionals in the Chapter 11 Case, and the preparation of the Monthly Payment Statements, presentation of the Interim Application and preparation of this Final Application in full compliance with the guidelines established by this District in the cases of In re Pettibone Corp., supra and In re Wildman, supra.    In that regard, Movant is entitled to receive compensation for the preparation of the Final Application in accordance Section 330 of the Code as discussed in In re NuCorp Energy, Inc., 764 F.2d 655, 662 (9th Cir. 1985).    See also Matter of Hutter Const. Co., Inc., 126 B.R. 1005, 1012 (Bankr.N.D.Wis. 1991)(citing NuCorp for position that debtor's counsel is entitled to compensation for reasonable time spent drafting fee application); and In re Pettibone, 74 B.R. at 304 ("This Court feels that the better view is to permit professionals reasonable compensation for time spent in preparing fee applications"). Not surprisingly, due to the complexities of this case and the substantial commitment and services rendered by Movant throughout the lengthy Final Application Period, the efforts needed to properly reflect such services that are the subject of this Final Application have taken a significant time.

**E.       PACA CLAIMS**

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 14.10 | $400 | $        5,640.00 |
| TOTAL | 14.10 | | $        5,640.00 |

Movant expended 14.1 hours during the Final Application Period related to the assessment

of, objections to and the mechanism for payment of PACA Claims filed by certain vendors, all

within relevant statutory and case law addressing the rights of such claimants in a Chapter 11

bankruptcy.   In an effort to keep the Chapter 11 Case on track, Movant was sure to update

PACA claimants regarding the Debtor's asset-sale efforts and the potential impact thereof on

such claims.   Ultimately, the Movant filed on the Debtor's behalf a report on the PACA Claims

and the objections thereto, and facilitated the resulting court-approved payment of the allowed

PACA Claims in full.

## IV.

## <u>STANDARDS FOR REVIEW OF THE APPLICATION</u>

The Court need look no further than Local Rule 5082-1 and the long-established opinions

in <u>In re Pettibone Corp.</u> and <u>In re Wildman</u> for the applicable standard of review of the Final

Application.   The court in <u>Pettibone</u>, at 74 B.R. 301, stated:

> Under Sections 330 and 331 of the Code, professionals applying for fees must
> demonstrate *in writing* that their services were (1) actual; (2) necessary, and (3)
> reasonable.   Once services have been performed, Bankruptcy Rule 2016 requires
> that:
>
> A person seeking interim or final compensation for services, or reimbursement of
> necessary expenses, from the estate shall file with the court an application setting
> forth a *detailed* statement of (1) the services rendered, time expended and
> expenses incurred, and (2) the amounts requested.   (Emphasis in original.)
>
> These detailed applications establish the "actual", while an accompanying
> narrative explanation of the "how" and "why" establishes the "necessary".
>
> The primary objective of any fee petition is to reveal sufficient data to enable the
> Court to determine whether the services rendered were reasonable, actual and
> necessary.   <u>In re Jensen-Farley Pictures, Inc.</u>, 47 B.R. 557 at 582 (Bankr.
> D.Utah, 1985).

While the court has wide discretion in reviewing a fee petition, such authority must be dispensed "with great care and fairness," In re Wildman, 72 B.R. at 705, while keeping in mind that the well accepted goal is to encourage and induce capable attorneys to practice in the Bankruptcy Court. See In re Pettibone, 74 B.R. at 306.

In analyzing a fee petition, the court must determine "what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992). Moreover, as stated in In re Boston and Maine Corporation, 776 F.2d 2, 10 (1st Cir. 1985), the court should focus on the benefits to the estate and the quality of the performance of counsel in the context of the case *as a whole*:

> Given these circumstances, it is important for a court to maintain "a sense of overall proportion," Gabriel v. Southworth, 712 F.2d 1505, 1507 (1st Cir. 1983), and not "become enmeshed in meticulous analysis of every detailed facet of the professional representation," Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976) ("Lindy II"). It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that B&M would not have enjoyed the success it did had its counsel managed matters differently. Fee-cutting "ideally should be tempered with a view towards the *need for the services at the time they were rendered*." In re Casco, 25 B.R. at 756 (emphasis added).

Some of the courts in this District have adopted the factors cited in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, (5th Cir. 1974) in determining whether the fees requested by professionals are actual, necessary and reasonable to a debtor's estate. See In re Palladino, 267 B.R. 825, 830-31 (Bankr. N.D. Ill.2001). The twelve Johnson factors are:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

Movant has endeavored to prepare this Final Application in accordance with the standards and guidelines outlined in Pettibone, Wildman, and submit that when evaluated by the factors set forth in those cases and/or in Johnson, this Final Application and the services rendered by Movant in the Final Application Period merit the full and final award of compensation and expense requested herein.

**Form of Application**

1.    Itemized Daily Entries - Each of the categories reflected contain detailed entries listing the subject activity; the date; the time spent; the nature of the services rendered; and the purpose for same.   Explanations are included to inform the reader of the circumstances giving rise to the activity.

2.    Telephone Conferences - Telephone conferences are detailed with disclosure of the topic of discussion, as well as the person called and reason therefor.   Telephone conferences are cost beneficial to the estate as they provide the most efficient way to handle the numerous matters involved.

3.    Meetings and Office Conferences - Movant spent considerable time in meetings and conferences as a means of performing the services required.   Where a meeting is described, the persons present and topics discussed are set forth.

4.      <u>Drafting</u> - The drafting of documents, letters, motions and orders is clearly delineated.    The complexity of the matters and the numerous parties involved often dictated many revisions.

5.      <u>Legal Research</u> - While the members of Movant have devoted substantially all their professional careers to the practice of commercial law, bankruptcy, insolvency and corporate reorganizations, legal research was required on numerous occasions in a case of this magnitude.    A lawyer who does not spend considerable time conducting legal research is doing a disservice to his client, and will soon find out that the rapidly evolving field of bankruptcy law is leaving him or her behind.    Indeed, the Seventh Circuit has recognized the need and requirement for constant research and preparation by attorneys, even in their own specialized areas of concentration.    <u>See</u> <u>Continental Illinois Securities</u>, 962 F.2d at 570 (when addressing the fee request of securities lawyers in a class action securities lawsuit, the Court stated that "no one carries the whole of federal securities law -- not only the many detailed statutes and regulations but the thousands of decided cases -- around in his head, and a lawyer who tries to respond to a motion or brief without conducting fresh research is courting sanctions or a malpractice suit").

6.      <u>Minimum Time</u> - Movant does not apply a uniform amount of time to a particular activity.    The time entries herein have been kept on a tenth of an hour basis.    The Court should be sensitive, however, to the reality that bankruptcy cases do not lend themselves to meticulous time keeping.    Oftentimes, a lawyer's need to concentrate, the press of time and the emotion and energy involved, interfere with time keeping with exacting detail.    Great care has been utilized to keep reasonably accurate time.    Movant asks this Court to bear in mind the "big picture"

context hereinbefore described by the First Circuit Court of Appeals in the <u>Boston and Maine</u>

case.

   7.  <u>Lumping</u> - Movant has endeavored to avoid grouping a number of unrelated

activities into the same time entry.    The Court should, however, keep in mind that in a case of

the complexity of this Chapter 11 case, meetings or telephone conferences will involve the

discussion of numerous topics and several telephone calls may be made to a number of parties in

rapid succession on one or more topic areas.    The entries elaborately describe each activity with

identification of the party, the purpose of the activity and in many cases, the necessity thereof.

Such grouping is unavoidable, but the informative explanations herein serve to further describe

and delineate the time spent.

## V.

### BILLING JUDGMENT AND AVOIDANCE<br>OF DUPLICATION OF SERVICES

   As set forth in <u>In re Pettibone</u>, 74 B.R. at 303, Section 330 of the Code provides that

compensation for actual and necessary services makes the exercise of billing judgment

"mandatory" in bankruptcy fee petitions.    The estate should not bear the burden of duplication

of efforts which should be avoided by the exercise of good billing judgment.

   Movant is a small firm, which by definition prevents any significant duplication of efforts.

 Herein, Nathan Q. Rugg has performed the vast majority of services in connection with the

representation of the Debtor.    The extensive efforts required in this Chapter 11 case have, of

necessity, also involved other members of Movant.    Every effort has been made to delineate

specific tasks and in so doing, to prevent an unnecessary overlap in representation.    While

certain matters required joint consultations, duplication has been judiciously avoided.    When

two attorneys were needed, they were only involved due to the great complexity of a given

matter, the press of business, or if another member of the firm was handling a matter in some

way connected with another activity.    So, too, as with other matters, certain interoffice

conferences between partners of the firm or a partner and an associate occurred as were

necessary and beneficial for the estate.    The benefit to the estate from these activities resulted in

an associate being able to perform certain services which brought with it the lowered rates of the

associate and also the associate's greater availability to perform such services.    It is not realistic

to expect associates with limited experience in a case to operate as efficiently as a partner with

greater experience not only in a given case but in the practice of law.    Accordingly, some joint

participation in a case of this magnitude and activity is unavoidable.    In fact, however, such

overlap ultimately resulted in a more efficient and economic expenditure of time.

Practically speaking, a small firm such as Movant's does not have the luxury of having

more than one attorney generally handle any particular task.    So, too, in a case with issues as

complex as those presented to Movant here, at times certain problems required the collective

judgment of the attorneys in the firm.    Again, however, a review of the detailed statement of

services rendered by Movant in this Chapter 11 case reflects that duplication of services, albeit at

times necessary, was kept to an absolute minimum and in fact generated cost benefits to the

estate.    The appropriateness of the billing judgment of Movant can best be supported by the

following analysis of the factors set forth in In re Pettibone:

A.    Individual Responsibility - A review of this Final Application will show that a

minimal amount of conferring occurred in this Chapter 11 case.    When interoffice conferences

were required, they were required only to facilitate the coordination of effort and avoid the duplication thereof.   The Court will find few lengthy interoffice conferences given the complexity of this Chapter 11 case.   Movant has prepared this Final Application to comply with the billing guidelines for office conferences as set forth in In re Adventist Living Centers, Inc., 137 B.R. 692, 697 (Bankr. N.D. Ill. 1991).   In conformity with Adventist Living Centers, Movant has billed only "active" attorney's time for office conferences.   However, if the office conference constituted (i) a "status" conference wherein one attorney advises another as to matters pending in a case and often assigns future work to be performed or (ii) a "strategy" conference wherein one or more attorneys determine the course of action to be taken, then Movant has billed for all attorneys involved in the conference.

B.     Court Appearances and Meetings - In over 600 hours reflected in this Final Application, there are few if any instances where more than one attorney attended a particular court appearance.   The notable except for this general rule arises at the contested hearings for approval of the sale procedures, the stalking horse bidder and ultimately the final approval of the successfully bidder, which represent the most critical hearings of the case.

Meetings for particular matters have with few exceptions been attended by only one attorney.   On certain occasions, it was necessary for more than one attorney to attend a meeting.   The use of more than one attorney was precipitated by the fact that such meetings usually led to the delegation of several different activities, or involved discussions concerning information that could best be gained secondhand.

C.     Appropriate Level of Skill - Herein, Mr. Rugg has had a significant role in the representation of the Debtor in those areas requiring the services of more experienced

practitioners.    Where appropriate, however, the legal work was handled by other members of

Movant to take advantage of lower billing rates.    In particular, Movant utilized the services of

Mr. Buck, at the time a "senior associate" and now a member of the firm.

       D.    <u>Legal Research</u> - Most of the legal research was performed by members of

Movant with lower hourly rates to further reduce the amount of fees in this Chapter 11 case.

       E.    <u>Document Review</u> - A careful review of the detailed time entries will reflect that

there are very few entries for one attorney reviewing the work product of another attorney.    In

the rare cases where such examination appears, it was necessary as a result of the press of time

and complexity of the matter involved.    It is both necessary and expected that such complex

legal work will involve a certain amount of analysis by more than one attorney.    The Court

should be advised, however, that these instances are few, and at no time was such a review

simply a matter of interest.    Again, pursuant to the requirements of <u>Adventist Living Centers</u>,

only the active attorney's time is billed in this Final Application for a document review

conference.

**VI.**

**QUALIFICATIONS OF MOVANT; PRECLUSION OF
EMPLOYMENT DUE TO ACCEPTANCE OF THIS
<u>CASE; AND COST OF COMPARABLE SERVICES</u>**

       Adelman & Gettleman, Ltd. was established in 1983 and has been listed in The

Martindale-Hubbell Bar Register of Preeminent Lawyers since approximately 1985. The firm is

the only Chicago bankruptcy boutique firm having its lawyers recognized in Illinois Leading

Lawyers Network, Best Lawyers in America, Woodward/White, World's Leading Lawyers by

Chambers and Partners, Legal Publishers 2002-2003, America's Leading Lawyers for Business,

Chambers and Partners, Legal Publishers 2004-2008, The Best Attorneys Network and Illinois "Super Lawyers."

Movant has brought to bear on the problems of the Debtor the collective skill and experience of the following members of Adelman & Gettleman, Ltd.:

<u>CHAD H. GETTLEMAN</u>

Chad H. Gettleman is a 1976 graduate of Marquette University Law School, and is licensed to practice in the states of Illinois and Wisconsin.   In 1973, Mr. Gettleman obtained his undergraduate degree in accounting from the University of Illinois and thereafter became a non-practicing Certified Public Accountant.   Following his law school graduation, Mr. Gettleman went to work for the U.S. Securities and Exchange Commission in the branch of corporate reorganization of the Chicago Regional Office, which dealt with public interest cases in a twenty-two state area under Chapters X and XI of the old Bankruptcy Act.   In 1979 Mr. Gettleman left government practice and joined the then oldest bankruptcy boutique firm in Chicago.   He has been involved in major bankruptcy cases since 1976 and has confirmed numerous plans of reorganization.   Mr. Gettleman has devoted his entire professional practice exclusively to the areas of commercial bankruptcy, insolvency, and reorganization since entering practice in 1976.

In 1983, Mr. Gettleman formed the law firm of Adelman & Gettleman, Ltd. with Howard L. Adelman.   Both Mr. Gettleman and Mr. Adelman remain the sole shareholder-principals of the firm.   From 2004 to 2008, Mr. Gettleman was chosen by his peers as a member of the Illinois Leading Lawyers Network for Bankruptcy and Workout Lawyers and has also been listed in Chambers USA (2008) and the Best Attorneys Network in the areas of bankruptcy and

reorganization.   Most recently, in 2008 - 2014, Mr. Gettleman was elected by his peers as an

Illinois Super Lawyer in the area of bankruptcy and reorganization.   He is a co-author of

"Representing the Secured Creditor and Adequate Protection," Business Bankruptcy Practice,

2006 ed., 2008 Supp., Illinois Institute of Continuing Legal Education, and also "Inside the

Minds - Attracting and Retaining Clients", 2008 ed., Aspatore Books (A Thomson Reuters

Company). He is a member of the Illinois State Bar Association, Chicago Bar Association

(Bankruptcy and Reorganization Committee), American Bar Association (Section on

Corporation, Banking and Business Law), and the State Bar of Wisconsin.

## HENRY B. MERENS

Since admission to practice in 1981, Mr. Merens has concentrated in the areas of

bankruptcy, real estate, civil litigation and commercial transactions, and has had extensive

experience in virtually all aspects of insolvency practice.   Mr. Merens has participated in

numerous significant Chapter 11 cases, as counsel to debtors, creditors, creditors' committees,

secured lenders, trustees and other parties.   As debtor's counsel, Mr. Merens has confirmed a

number of Chapter 11 plans of reorganization and has successfully concluded multiple Chapter

11 liquidations involving going concerns sales of various business enterprises.   Mr. Merens has

had several articles published in the fields of bankruptcy and commercial practice, and has

participated as a featured speaker at a seminar dealing with mortgage foreclosures in Illinois,

speaking on the interplay of bankruptcy and the foreclosure process.   In April 2009, Mr.

Merens participated in a panel discussion sponsored by the National Business Institute entitled

"Bankruptcy Forum: What Judges And Trustees Want You To Know."   Mr. Merens covered the

segment of the discussion concerning Real Estate Issues in Bankruptcy.   Mr. Merens has been

selected by his peers in Illinois Super Lawyers multiple times.    Mr. Merens earned his B.A.

degree at Trinity College and his J.D. degree at the Washington University School of Law.


## NATHAN Q. RUGG

Mr. Rugg became a principal of the firm in January 2009, and has represented individual

and corporate debtors, secured lenders, creditors, purchasers, guarantors, shareholders, and

assignees for the benefit of creditors in workouts, liquidations, reorganizations, refinancings

adversary proceedings, claim litigation and commercial litigation.    He has been named by his

peers as a Rising Star in the Illinois Super Lawyers publication in the area of bankruptcy and

reorganization for each of the years 2009-2014. Mr. Rugg has also received the Martindale

Hubbell peer review rating of "AV Preeminent." Mr. Rugg has served as a Co-Chair for the

Bankruptcy Court Liaison Committee and serves on the Volunteer Attorney Panel in the

Northern District of Illinois. Mr. Rugg is a 1997 graduate of Dartmouth College, and graduated

from the University of Illinois College of Law in 2000 *cum laude*. While attending the

University of Illinois, Mr. Rugg served as an Associate Editor of the University's Elder Law

Journal. He is a member of the Chicago Bar Association, Illinois Bar Association and the

American Bankruptcy Institute.

## ERICH S. BUCK

Mr. Buck, now a member of Adelman & Gettleman, Ltd. Since 2013, joined the firm in

November 2007 as associate and focuses his areas of practice in business bankruptcy,

reorganization and commercial litigation.    Mr. Buck is a 1997 graduate of Northwestern

University and in 2001 graduated from the University of Iowa College of Law.    While

attending the University of Iowa , Mr. Buck served as Managing Editor of the University's

*Journal of Gender, Race & Justice*.    Upon graduating law school, Mr. Buck served two years as

law clerk to the Honorable Carol A. Doyle of the United States Bankruptcy Court for the

Northern District of Illinois.    Prior to joining Adelman & Gettleman, Ltd., Mr. Buck was an

associate at Reed Smith LLP (formerly Sachnoff & Weaver, Ltd.), where his practice focused

primarily on creditors' rights litigation.    He has been named a Rising Star in the Illinois Super

Lawyers publication since 2009.

<u>REBECCA D. ROSENTHAL</u>

Ms. Rosenthal joined the firm in May 2007 and practices in the areas of business

bankruptcy, reorganization and commercial litigation; she has since left the firm and currently

practices at Greenburg Traurig. Ms. Rosenthal graduated *cum laude* from Syracuse University in

1999 earning a B.S. in Accounting and is a Certified Public Accountant (CPA). She graduated

law school in 2008 from Loyola University Chicago School of Law. During law school, Ms.

Rosenthal earned a judicial externship with the Honorable Susan Pierson Sonderby, United

States Bankruptcy Judge for the Northern District of Illinois.

The following is a summary of the legal services rendered by Movant during the Final

Application Period:

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| NQR | 426.2 | $400/hr | $170,480.00 |
| CHG | 70.9 | $460/hr | $32,614.00 |
| ESB | 109.1 | $300/hr | $32,730.00 |
| JB (paralegal) | 7.8 | $135/hr | $1,053.00 |
| HBM | 8.3 | $460/hr | $3,818.00 |

| | | | |
|---|---|---|---|
| RDR | 16.1 | $300/hr | $4,830.00 |
| TOTAL | 638.4 | | $245,525.00 |

As a result of the acceptance of employment as counsel to the Debtor for this Chapter 11 case, Movant was precluded from rendering services in other substantial legal matters.    Since the commencement of this Chapter 11 case, Messrs. Gettleman, Rugg and Buck have at times spent a significant portion of their time on matters involving the Debtor. The expertise of Messrs. Gettleman, Rugg and Buck have been required in light of the complexity of this Chapter 11 case.    The hourly rates charged by Movant, which for the Final Application Period equate to a blended rate of approximately $385 per hour, are more than commensurate with the skill and expertise brought to bear on the duties and responsibilities of the Debtor, are significantly less than Movant's current rates and are substantially less than the rates of many other bankruptcy practitioners of similar or even less experience in this District.

## VII.

## MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016; NOTICE

Except with respect to the sharing of compensation authorized under Section 504(b) of the Code, Movant has not shared or agreed to share any award of fees received in connection with this Chapter 11 case with any person, firm or entity. There does not exist any agreement or understanding between Movant, associates or employees, and any other person, firm or entity with respect to the sharing of compensation herein.

Consistent with the deadlines and reduced service requirements established by this Court

in that certain Order on Motion Requesting Dismissal of the Chapter 11 Case and Granting

Related Relief, entered on March 27, 2014 [Docket No. 368], Movant filed this Final

Application on April 7 and is providing notice of the Final Application to the twenty largest

creditors of the estate, all parties that have filed an appearance or requested notice in the case

and the Office of the United States Trustee. Pursuant to Bankruptcy Rules 2002(a) and (i), 9006

and 9007, and the afore-mentioned order, the Court has allowed such reduced notice of this Final

Application to be filed with the Committee's counsel in lieu of service to all creditors in this

Chapter 11 case. Movant submits that such notice is adequate under the circumstances, and

requests that no further notice be required.

**VIII.**

**CONCLUSION AND REQUEST FOR ALLOWANCE**
**AND PAYMENT OF FINAL COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES**

For the above and foregoing reasons, in consideration of the time and labor required and

performed in this Chapter 11 case; the experience, reputation and ability of Movant, and the

results achieved; Movant respectfully requests approval on a final basis of all compensation

requested for the Interim Period and the Final Application Period, and payment of final

compensation as counsel to the debtor in possession during the Final Application Period in the

amount of $84,493.80 (and reimbursement of ordinary and necessary expenses incurred in

connection therewith in the amount of $1,413.29) sought herein be determined to be reasonable

and justified, and that the fees and costs requested be allowed, and for such other and further

relief as is just.

GKI- FINAL FEE APPLICATION FOR A&G   4/7/14

Respectfully submitted,

ADELMAN & GETTLEMAN, LTD.

By: _____/s/ Nathan Q. Rugg_____
Nathan Q. Rugg, Esq.

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
*Attorneys for Debtor*